Durfee, Judge,
delivered the opinion of the court:
This suit under Title 28, U.S.C., section 1498 was brought to recover compensation for the unauthorized manufacture for and use by the Government of a machine for washing laboratory glassware allegedly covered by claims contained in two different patents issued to the plaintiffs. The petition alleged the infringement of seventeen of the claims set forth in Letters Patents 2,202,344 and 2,260,518. However, during trial and in their brief and argument, the plaintiffs stated that only claims 2, 6, and 13 of patent 2,260,518 need be considered. That patent will be called the “ ’518 patent” wherever referred to, and the discussion will make no reference to the other patent.
The Fisher Scientific Co., one of the plaintiffs and licensee under the patents, furnished the defendant with a model of a washing machine for laboratory containers, with drawings, at the time of an early bid, and the materials were used by the defendant in the preparation of specifications in a subsequent invitation for bids. Another manufacturer bid lower than did Fisher and was awarded the contract. It is conceded that, if valid, the claims of the ’518 patent were infringed since the accused machine was made in accordance with the disclosure of that patent and it responds in terms to the recitals of the claims on which plaintiffs rely. However, as will be developed below, it is our judgment that the claims 2, 6, and 13 of the ’518 patent are invalid over the disclosures of a number of prior patents. The defendant has not produced sufficient evidence to support its contention that the patents in suit are misdescriptive, misleading, inadequate, or inop *285 erative. However, this point need not be ruled upon in view of our bolding on the invalidity of the claims.
To clarify our determination of the invalidity of the three claims relied on, we will also consider claim 1 of patent ’518. Claim 1 and each of the other three claims vary somewhat from one to the other but, for the most part, reiterate the principal features of the machine illustrated. The claims define a washing machine, including a drum, rotatable inside a tank, the end plates of the drum being closely adjacent to the tank sides, which end plates have an arrangement of openings in parallel and perpendicular lines suitable for holding compartment forming devices which occupy substantially all of the space between the end plates and which have a means for latching into the end plate openings, operable from between the end plates. Claim 6 specifies that the compartment forming devices include a frame-mounted screen with spring means for yieldingly urging the screen into engagement with the articles in the compartment.
As we understand the plaintiffs’ contentions, the invention covered by the claims in suit includes three features: a particular systematic arrangement of openings in the end plates; compartment forming devices capable of yieldingly engaging the articles to be washed and which cooperate with the end plates; and latching mechanisms operable within the space between the end plates permitting the compartment forming devices to be removed. Initially, we comment in passing only that the prior art as shown by numerous patents disclosed a washing machine comprising a tank within which a drum was rotated. These patents are identified in the findings and will not be repeated here. No invention was involved in placing the rotating drum within a tank in plaintiffs’ machine.
It is the systematic arrangement of openings rather than simply the openings or the end plate itself which plaintiffs claim constitutes invention. However, the prior art discloses the practice of placing holes in end plates of washing machines. The Smith patent, partially reproduced in the appendix to the findings, discloses a dishwashing machine the end plates of which contain a number of holes for adjustable compartment forming devices. Other patents dis *286 closing a multitude of openings in drum end plates are those of Baker, Bornot, and Beckwith. In addition to the perforated end plates, the Beckwith patent also discloses longitudinal bars or slats forming work compartments. Clearly, the use of holes in the drum end plates teaches nothing new in view of the disclosures of the prior patents.
We do not think that the claim of a particular, systematic, non-radial arrangement of the holes adds anything new or patentable. The specification of the ’518 patent refutes the plaintiffs’ present contention that the particular arrangement ultimately decided upon has crucial significance for the specification of the ’518 patent states that the “plates may be of any configuration” and that the “openings may be systematically arranged in various fashions.” Cf. Straussler v. United States, this day decided, ante, p. 275. But even if the specification did not suggest that the arrangement of openings is a matter of choice and variable according to the particular purpose of the machine, the prior art discloses the provision of openings capable of receiving compartment forming devices which are arranged to follow a particular pattern. We again make reference to the Smith patent. To one having ordinary skill in the dishwasher art, it would have been apparent that the openings disclosed in the Smith patent could be varied when and as desired. That the systematic arrangement of holes in the ’518 patent, if there is one, is parallel and perpendicular rather than radial, does not amount to invention.
Bemovable or adjustable compartment forming devices occupying the area between end plates of the drum are found in the devices covered by the patents issued to Willcox, Batner, and Smith. Given the prior art teachings of perforated drum end plates and longitudinal devices for forming compartments to hold articles to be washed, our next inquiry leads to the conclusion that the latching system for joining the two is aggregative rather than inventive. The patents of Senge, Bichards, and Karnopp teach spring-biased lug-type latch pins such as described in patent ’518, and in the Karnopp and Bichards patents they are operable from between the end plates, an obvious expedient. The movable spring-pin latched shelf had been incorporated at an early *287 date into bookshelves as well, and to use this latch device, disclosed by the prior art, in attaching the movable compartments of a washing machine to its perforated end plates is no more than combining old features without cooperation and without producing any new result.
The final feature of plaintiffs’ device which they urge on the court as constituting invention is the frame-mounted, spring-biased screen which forms a compartment side. The Willcox patent, which is partially reproduced in the appendix to the findings, discloses a washing machine in which one side of a rotary compartment is of rectangular, frame-mounted wire net which is adjustable to engage or come in contact with the article to be washed. Spring pressure against a perforated holding element to yieldingly hold down items to be washed is shown in the Hoover patent. It would have been obvious to anyone having ordinary skill in the art to employ springs to yieldingly urge a screenlike compartment side, such as disclosed by Willcox, into engagement with articles within the compartment. It seems to us to be an obvious expedient to substitute spring means for the nut and bolt combination shown in the Willcox patent.
Finally, the plaintiffs stress that a novel, cooperative action was created between the spring-biased compartment side and the pattern of apertures in the end plates. But, as has been shown, both of these features were old and the manners of their individual operations were well-known. We can find no cooperative action between the formation of varying compartment sides and the placement of the entire compartment in one or another position, as the need or desire dictates, within the drum.
We see no new results or cooperation or conjoint action in the arrangement of the principal features of plaintiffs’ machine as set forth in the claims in suit. Claims 2, 6, and 13 of the ’518 patent, relied on for recovery, are each invalid over the disclosures of the several prior patents discussed above and in the findings. Consequently, the plaintiffs’ petition must be dismissed.
It is so ordered.
Laramore, Judge,; Maddeh, Judge; Whitaker, Judge, and JoNes, Chief Judge, concur.
*288 FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Donald E. Lane, and the briefs and argument of counsel, makes findings of fact as follows:
1. This is a patent suit under Title 28 U.S.C., Section 1498, for reasonable and entire compensation for the unlicensed use or manufacture by or for the defendant of certain inventions relating to washing machines disclosed in two United States Letters Patent owned by plaintiffs. At pretrial, the parties agreed to a separation of issues, and that the questions of validity and infringement of the patents in suit be first determined upon full proofs, findings of fact, and argument of counsel, and that any accounting issue be deferred.
2. Plaintiff Charlotte Chemical Laboratories, Inc., is a corporation organized and existing under the laws of the State of North Carolina, and has its principal office and place of business at 810 Templeton Avenue, Charlotte, North Carolina. Plaintiff Fisher Scientific Company is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal office and place of business at 717 Forbes Street, Pittsburgh 19, Pennsylvania. Plaintiff John H. Hamilton is a citizen of the United States of America, residing at State Laboratory of Hygiene, 214 West Jones Street, Raleigh, North Carolina. Plaintiff David B. Nicholson is a citizen of the United States of America, also residing at State Laboratory of Hygiene, 214 West Jones Street, Raleigh, North Carolina.
3. In defendant’s motion for summary judgment filed July 26,1957, defendant contended that the patent claims in suit are invalid as relating to a machine which is not useful or operative, and contended that plaintiffs would not be entitled to more than nominal damages. The defendant’s motion for summary judgment was argued and overruled in open court January 14,1958.
4. On May 28, 1940, patent 2,202,844 was issued to plaintiffs Hamilton and Nicholson on an application for patent filed in the United States Patent Office on January 24,1936. On October 28,1941, patent 2,260,518 was issued to plaintiffs *289 Hamilton and Nicholson on an application for patent filed January 24, 1938. Patents 2,202,344 and 2,260,518 are each entitled “Washing Machine.” Said patents will hereinafter be referred to as the ’344 patent and the ’518 patent. Plaintiff Charlotte Chemical Laboratories, Inc., was the exclusive licensee of said Hamilton and Nicholson by virtue of an exclusive license agreement dated September 1, 1936, and since January 11, 1954, has been the exclusive owner of both the ’344 and the ’518 patents by virtue of an assignment from said Hamilton and Nicholson to Charlotte Chemical Laboratories, Inc. Plaintiff Fisher Scientific Company was the exclusive licensee of Charlotte Chemical Laboratories, Inc., for the six years preceding August 11, 1955, this exclusive license prior to January 11, 1954, being with the consent of patentees Hamilton and Nicholson.
5. Plaintiffs’ brief states that only claims 2, 6, and 13 of the ’518 patent need be considered by the Court. The Trial Commissioner’s findings with respect to the ’344 patent need not be repeated.
THE ’518 PATENT
6. The ’518 patent relates to apparatus for washing, soaking, rinsing, sterilizing, and storing containers and similar articles. The apparatus illustrated is generally similar to that disclosed in the ’344 patent but includes additional constructional details. The ’518 apparatus is described as including compartment forming devices which can be selectively arranged to form a varied number of article-receiving compartments of various sizes and shapes to accommodate various types of articles. The drawings of the ’518 patent contain twenty-four figures including the following four views selected therefrom to illustrate apparatus of the type defined in the several ’518 patent claims in suit.
Referring to these views selected from the ’518 patent drawings, there is disclosed apparatus for washing containers of various dimensions and shapes. This apparatus includes a tank 10 (figs. 3 and 4) for holding a quantity of water or other washing fluid, and includes a drum comprising opposed end plates 65 mounted on a rotatable shaft 40 (figs. 3 and 4). Each circular end plate 65 is provided with a multiplicity

*290

of systematically arranged openings (fig. 6). The openings are arranged in lines , line N1 being spaced one-quarter of the distance from tlie center of rotation to the periphery. The second line N2 is parallel to line N1 and is spaced half the distance from the center of rotation to the periphery. A shorter parallel line N3 is spaced at five-eighths and line N4 is spaced at three-quarters of said radial distance. Other lines of aligned openings are similarly arranged as designated by the E, S, and W series illustrated in fig. 6. These lines of openings are non-radial, and the N and S series are arranged to extend perpendicular to the E and W series. The openings in one end plate 65 are aligned with similar openings in the other end plate of the drum.

*291

7. Compartment forming devices including foraminous sides 75 and 120 extend between tlie end plates 65 (figs. 3 and 4), and are adjustably positioned by means of projecting pins adapted to latch in selected openings in the end plates. As indicated in fig. 3, these compartments may utilize substantially the entire volume of space between the

*292

end plates 65 of the drum. The latching means projecting from the ends of the compartment forming devices are operable from between the end plates 65 by means of handles such as designated by the reference numerals 106 and 107 in fig. 8. The latching pins are provided with resilient means such as springs to urge them outward into the aligned openings described above. The pins 101 and 102 are operable for simultaneous withdrawal from the end plates when the compartment sides are to be removed or repositioned. Keeper bars may be used with the ’518 patent apparatus as illustrated by the reference letter K in figs. 3 and 4. The compartments may have one side thereof such as side 75 (figs. 3 and 4) in the form of a frame including members 76, 77, 78, and 79 (fig. 8) with a screen 84 (fig. 3) mounted for movement in the frame. The screen is biased by springs 90 carried beneath a cross plate 91 of the frame. These springs yieldingly urge the screen into engagement with articles positioned in a compartment for washing. The frame 75 may be pivotally supported on hinge pins 116 (fig. 8) in-

*293

serted in openings 161 (fig. 6) and the other supporting pins 101 and 102 (fig. 8) inserted in an opening of the curved series 162 (fig. 6). The inner or bottom sides 120 (figs. 3 and 4) of the compartments also may be foraminous plates or screens provided with latch pins.
8. In order to hold laboratory dishes for washing, a pivoted cradle arrangement 170 (figs. 3 and 4) is illustrated and described in the ’518 patent. This cradle arrangement comprises a pair of circular end plates connected by longitudinal bars, transverse struts or dividers being provided throughout the length of the cradle. A supporting bolt extends between an off-center opening in the cradle end plate and an opening in the drum end plate 65 to support the cradle 170 in a constantly upright position during rotation of the drum.
9. Plaintiffs’ charge of patent infringement of the ’518 patent was first limited to claims 1 to 4, 6 to 10, 12 and 13 of said patent. Plaintiffs’ brief states that only claims 2, 6, and 13 need be considered. However, claim 1 of the ’518 patent will be considered in order that the three claims now relied on will be clear. Claim 1 of the ’518 patent recites a *294 combination of structural elements. The wording of this patent claim is set forth, below with indentations and emphasis added to facilitate identity and understanding of the structure defined and claimed thereby.

Olaim 1 of ’518 patent

In a washing machine, a rotatable drum comprising
11) a pair of opposed end plates,
(2) each of said plates having a multitude of systematically arranged openings therein throughout a major portion of the area of said plates,
(2a) said systematic arrangement comprising a plurality of non-radial parallel lines of openings, and a second plurality of parallel lines of openings which are arranged perpendicular to said first-named lines of openings,
(3) a plurality of removable compartment forming devices of length substantially equal to the distance between the inner faces of said plates,
(3a) said devices having means at their ends to latch in selected of said openings in said plates, whereby a varied number of compartments of various sizes and shapes may be formed between said plates to accommodate different sizes and shapes of articles to be washed,
(3b) said compartments utilizing substantially the entire volume of space between said plates.
10. Claim 2 of the ’518 patent differs from claim 1 in that it specifically recites the tank, that the end plates of the drum are disposed closely adjacent to the walls of the tank, and that the latching means are operable from between the plates. This claim omits claim 1 recital (3b) that the compartments utilize the entire volume between the plates. Claim 2 reads as follows, emphasis added:

Olaim 2 of ’518 patent

2. In a washing machine, a tank, a rotatable drum in said tank comprising a pair of opposed end plates disposed closely adjacent to the walls of said tank, each of said plates have a multitude of systematically arranged openings therein throughout a major portion of the area of said plates, said systematic arrangement comprising a plurality of non-radial parallel lines of openings, and a second plurality of parallel lines of openings which are *295 arranged perpendicular to said first-named lines of openings, a plurality of removable compartment forming devices of length substantially equal to the distance between the inner faces of said plates, latching means on the ends of said devices operable from between said plates and adapted to enter selected of said openings in said plates, whereby a varied number of compartments of various sizes and shapes may be formed between said plates, to accommodate different sizes and shapes of articles to be washed.
11. Claim 6 of the ’518 patent differs from claim 1 in that it specifically recites that one of the compartment side devices comprises a frame, a screen mounted to movement in the frame, and spring means on the frame for yieldingly urging the screen into engagement with articles in the compartment. This claim omits claim 1 recitals (2a) and (8b).
12. Claim 13 of the ’518 patent reads as follows, indentations and emphasis added:
In a washing machine, a rotatable drum comprising
(1) a pair of spaced discs, said discs having
(2) a multitude of systematically arranged compartment side receiving openings therein covering substantially their entire area, said openings
(2a) being arranged in four groups of parallel lines of openings.
(2b) each group extending at right angles to one of four axes a quadrant’s distance apart extending from the centers of said discs,
(2c) openings in one disc being in alignment with corresponding openings in the other disc, and
(3) removable compartment forming devices adapted to be secured between corresponding openings in said discs.
INVALIDITY OF CLAIMS
13. Defendant urged that the patent claims in suit are invalid over the disclosures of prior patents, invalid for lack of invention, invalid as defining only an aggregation of well-known washing apparatus features, and invalid as being misleading or misdescriptive in defining an apparatus alleged to be ineffective to properly wash certain types of containers.
*296 14. The early patent issued to Willcox, 404,141, dated May 28, 1889, discloses a similar apparatus for washing bottles of various sizes. Referring to the Willcox patent drawings, reproduced in the appendix to these findings, the Willcox apparatus includes a tank H containing a rotary drum or “wheel” construction comprising a shaft A supporting pairs of opposed “arms” C. Trays E of wire netting held in rectangular metal frames are slidably supported at their opposite ends by members e attached to the arms C. Containers to be washed may be held against the tray E, as shown in dotted lines in fig. 3, by side F and be further retained by a gate or bar G. The bar G prevents containers from being thrown out of the compartment formed by sides E and F during washing. The side F is adjustably held by wing nuts d' on rods projecting from the side frames through aligned openings or slots d in. the arms C. The Willcox patent specification states, “I have shown eight pairs of spokes C C'; but it is to be understood that I may use any desired number of pairs of spokes, * * This Willcox patent was cited by the Patent Office Examiner in the ’518 patent application file.
15. The disclosure of the early Willcox patent is clear to one having ordinary skill in the bottle-washing machine art. No extraordinary skill would be required to provide for removal of the adjustable rectangular trough sides F when replacement becomes desirable. The Willcox patent drawings are not necessarily engineering drawings made to scale, but do constitute an adequate disclosure of an operative bottle-washing apparatus.
16. The early Ratner patent 1,311,179, issued July 29,1919, discloses a washing machine having a rotary frame supporting removable racks for dishes or containers. Each rack comprises end members 15 connected by longitudinal rods 16 to form compartments for the articles to be washed. The articles may be locked in the compartments by removable longitudinal rods 37', as illustrated in figs. 7 and 8 of the Ratner patent drawings, reproduced in the appendix to these findings.
17. The early Smith patent 1,176,866, issued March 28, 1916, discloses a dishwashing machine having a rotary *297 holder including end discs 12 connected by plural sets of longitudinally extending bars 14, 15, and 16. Additional bars 19 and 20 supported by a pivot bar 17 are provided to keep dishes in the open troughs or compartments. As illustrated in fig. 1 of the Smith patent drawings, reproduced in the appendix to these findings, the end members 12 are provided with series of holes 30 for adjustability. The Smith patent specification states:
A series of holes 30 is provided in each disk for each of the bars 14,15 to permit them to be secured different distances from the outer bars and correspondingly vary the troughs, and to adapt the troughs for hollowware or dishes of different sizes or shapes. The troughs are formed in annular series and any number may be provided according to the capacity desired.
18. Claim 1 of the ’518 patent specifies that the openings in said end plates are systematically arranged in a plurality of non-radial parallel lines and in a second plurality of parallel lines perpendicular to the first lines of openings, and also adds that the compartments utilize substantially the entire volume of space between the end plates. A systematic arrangement of end plate openings is illustrated in fig. 6 of the ’518 patent drawings reproduced in finding 11. Concerning the arrangement of end plate openings, the ’518 patent specification states:
As best shown in Figures 4 and 6, the rotatable drum comprises a pair of rotatable plates 65 rigidly secured to the shaft 40 by means of collars 67. These plates may be of any configuration, but are preferably circular in contour as shown in Figures 3 and 6, and are of as large diameter as possible to be conveniently accommodated within the tank without engaging, the top 13 when the latter is closed, or any other fittings within the tank such as the heater 35. Each of the plates 65 is provided with a systematic series of openings as shown in Figure 6 whereby a varied number of container compartments of various sizes may be selectively formed on the drum between the discs to receive the varied number and types of containers and the like to be washed as desired. These openings may be systematically arranged in various fashions to suit the type of containers which are to be washed, and the distance *298 apart of these openings may be likewise varied as desired.
The ’518 patent teaches the art that the end plates 65 may be of any configuration and that the openings therein may be arranged in various fashions. The ’518 patent specification further states:
* * * The number of openings and their distance apart may be varied in accordance with the type of hereinafter described compartment forming equipment used, and in accordance with the type of containers which the washer is designed to cleanse. * * * Certain openings of each series may be omitted if not needed.
$ $ $ ‡ ‡
The above described apparatus provides equipment of great flexibility which may be assembled by an attendant in a laboratory, hospital or the like, to wash any types, sizes or numbers of laboratory equipment, such as flasks, dishes and the like as hereinbefore described. The arrangements which the machine may take, as far as the formation of compartments is concerned, are almost innumerable. * * *
19. The combination of elements recited in claim 1 of the ’518 patent is disclosed in the prior Smith patent 1,176,866, issued March 28, 1916. The Smith patent dishwasher includes a rotatable drum comprising opposed end plates 12 having systematically arranged openings 30 therein, and compartment forming devices defined by rods 14, 15, 16, 19 and 20 extending between the end plates, rods 14 and 15 being engageable in various openings 30 and said openings 30 being disposed in systematically arranged lines. The volume of space between the end plates which is utilized depends on the number of compartments and the shape and size of the articles to be washed. The Smith patent drawings including Smith fig. 1 reproduced in the appendix to these findings, show six longitudinal compartments for cups and glasses. The ’518 patent drawings also show six longitudinal compartments for assorted laboratory containers. In both the Smith and the ’518 patent construction, the space at and immediately adjacent to the drum axis of rotation is not utilized. With respect to the specific recital of claim 1 of the ’518 patent that the openings are arranged in perpen *299 dicular groups of nonradial parallel lines, fig. 1 of the Smith patent discloses a somewhat similar arrangement as marked in colored lines on the copy of the Smith patent marked defendant’s exhibit 5-A herein. Portions of the ’518 patent specification quoted in finding 18 teach that the actual number and actual arrangement of openings are clearly matters of choice and variable in accordance with the particular use of a given apparatus. It would have been obvious to one having ordinary skill in the dishwasher art that additional openings of the character indicated by the reference numeral 30 in the Smith patent drawings might be provided when and where necessary. Claim 1 of the ’518 patent is invalid over the disclosure of Smith patent 1,176,866.
20. Smith patent 1,176,866 was cited by the Patent Office examiner in rejecting original claim 1 of the ’518 patent application. Counsel amended original claim 1 by inserting:
* * * said systematic arrangement comprising a plurality of non-radial parallel lines of openings, and a second plurality of parallel lines of openings which are arranged perpendicular to said first-named lines of openings, * * *.
and argued:
The Smith patent does not now meet the claims for the openings there shown do not appear to be arranged in any system for forming different types of compartments. These openings are particularly arranged to hold definitely shaped articles, such as a cup, or a tumbler. If the openings in the construction of this patent follow any thought out plan, they probably would be said to be radially arranged, or in concentric circles. There can be no doubt of the fact that they are not arranged in the parallel and perpendicular lines now claimed.
21. In addition to Smith 1,176,566, another prior patent disclosing provision of a multitude of openings in drum end plates is Baker 547,655, issued October 8, 1895. Baker discloses a rotary washing machine having opposed plates B' which are perforated throughout their entire area. Baker does not disclose any compartment or trough devices within the drum. Bornot 812,005, issued February 6,1906, also dis *300 closes a rotary washing machine in which the drum heads E are provided with groups of parallel rows of perforations G. Bomot does not disclose any compartment forming device within the drum. Bornot 812,005 was cited in the ’518 patent application file but was not used by the Patent Office examiner against claim 1. Beckwith 102,358, issued April 26, 1870, discloses a rotary drum washing machine having the interior of the drum divided into compartments by longitudinal bars or slats. The Beckwith patent specification teaches that the bars d may be used to form four or more, or less, work compartments, and that said bars d are re-movably attached to the ends of the drum so that the bars may be taken out. Claim 1 of ’518 does not define in detail the latching means at the ends of the compartment forming devices. The particular latching means illustrated by reference numeral 116 in fig. 8 of the ’518 patent drawings, are disclosed in the prior Senge patent 1,065,004, issued June 17, 1913. It would have been obvious to one having ordinary skill in the washing machine art to utilize the Senge latch pins in following the teachings of the Smith patent.
22. Claim 2 of ’518 is similar to claim 1 and, as noted in finding 10, adds specific recital of the tank, that the end plates of the drum are disposed closely adjacent to the walls of the tank, and that the latching means are operable from between the plates. No invention was involved in placing the ’518 rotary drum in a tank. It would have been obvious to one having ordinary skill that the rotary drum disclosed in Smith 1,176,866 could be immersed in the tank H of Will-cox 404,141, or in the tank 1 of Batner 1,311,179, or in tank A of Emerson 91,529, or in tank A of Baker 547,655, or in tank A of Beckwith 102,358, all mentioned above. That the end plates of the drum are disposed closely adjacent to the wall of the tank is a matter of degree and a matter of choice. The ends of the rotary drums disclosed in the washing and sterilizing machines illustrated in Emerson 91,529, or Beck-with 102,358, or Baker 547,655, or Bichards 566,471, are each adjacent to the walls of the tank. The requirement that the latching means are operable from between the end plates is likewise an obvious expedient as disclosed in fig. 3 of *301 Bicharás 566,471, wherein latching means 25 are operable by handles 27 located between end plates 9. The particular latching means operator designated by the reference numeral 148 in fig. 14 of the ’518 patent drawings is similar to that taught by Karnopp 2,003,651, issued June 4, 1935. In fig. 3 of Karnopp 2,003,651, reproduced in the appendix to these findings, the spring-biased latch pin 62 is operated by a handle 66 located between the end plates 38 and 40. Original claim 2 of ’518 was rejected by the Patent Office examiner as unpatentable over Bicharás 566,471 and Karnopp 2,003,651, but was allowed after amendment specifying in detail the arrangement of non-radial and parallel lines of openings. The three features which distinguish claim 2 from claim 1 of ’518 are each old as taught by the several patents discussed above. Claim 2 of ’518 is invalid over the same patents noted in findings 19, 20, and 21. Claim 2 of ’518 recites a combination of old elements or features which function each in its well-known manner and without producing any new result and without new cooperation and without new conjoint action.
23. Claim 6 of ’518 is similar to claim 1, as noted in finding 11, but defines a compartment side including a frame and a spring-biased screen mounted in the frame. Willcox patent 404,141, issued May 28,1889, discloses a bottle-washing machine in which one side of a rotary compartment is a rectangular screen F of wire netting in a metallic frame and adjustable into contact with the articles to be washed. Spring means to yieldingly urge a perforate holding element against articles to be washed is shown in the Hoover patent 1,292,780, issued January 28,1919. Claim 6 of ’518 is invalid over the same patents noted in findings 19, 20, and 21. It would have been obvious to one having ordinary skill in the art to use a spring or springs to yieldingly urge a compartment side into engagement with articles to be held in the compartment. There is no cooperative action between this spring means to yieldingly urge a screen for movement in a frame and the multitude of systematically arranged openings in the end plates recited in this claim. Claim 6 of ’518 recites a combination of old elements or features which *302 function each in its well-known manner without cooperating to produce any new result or new action.
24. Claim 13 of ’519 is specific to an arrangement of aligned openings in spaced discs. This claim specifies that the compartment side receiving openings are arranged in four groups of parallel lines and that each group extends at right angles to one of four axes a quadrant’s distance apart. Such a specific arrangement of openings is of limited significance in view of the plain teaching of the ’518 patent specification that these openings may be arranged in various fashions to suit the type of containers that are to be washed, and that the distance apart of these openings may be varied as desired. The language of claim 13 omits reference to the special openings 161 and the special curved line of openings 162, illustrated in fig. 6 of the ’518 patent drawings, required for the pivotally mounted compartment top side construction recited in claim 12. The arrangement of aligned openings is a matter of choice. In view of the earlier teachings of various arrangements such as in Smith 1,176,866, and the disclosure of openings throughout the area of the end plates disclosed in Baker 547,655, it would have been obvious to one having ordinary skill in the washing machine art to provide the end plate openings in the arrangement recited in claim 13 or in any other arrangement to suit the type or types of containers to be washed. Claim 13 of ’518 is invalid over the patents noted in findings 19, 20, and 21 and in view of Baker 547,655.
25. Claims 2, 6, and 13 of the ’518 patent are each invalid over the disclosures of the several prior patents noted above. These claims are also invalid as claiming aggregations of old elements or features which function each in its well-known manner without producing any new or unexpected results and without new cooperation or new conjoint action.
26. Defendant has urged as anticipations for the patent in suit numerous prior patents in addition to those noted in the above findings. These additional patents include the following:
Usher 135,176, issued January 21, 1873, discloses spring-biased pivotally mounted wire screens for holding dishes in a dishwashing machine.
*303 Binnington 399,477, issued March 12, 1889, discloses a bottle cleaning machine having suspended compartments which remain vertical.
Cochrane 512,683, issued January 16, 1894, discloses dish cleaning apparatus including a wire mesh basket with a spring-biased follower to maintain the basket in position.
McCarten et al. 522,565, issued July 3, 1894, discloses a dish cleaner including a foraminous compartment.
Haslam 556,184, issued March 10, 1896, discloses a yarn-dyeing machine having a rotatable drum including end plates connected by removable rods.
Mansfeld 570,322, issued October 27, 1896, discloses a showcase having a rotatable drum carrying suspended cradles for merchandise.
British patent 22,711 of 1909, and French patent 480,252, published July 12,1916, each discloses dishwashing machines having cradles suspended between end wheels.
Parry 1,232,964, issued July 10, 1917, discloses a machine for washing dishes and other articles, and provides various forms of article holding carriers and devices.
Becker 1,391,712, issued September 27, 1921, discloses washing apparatus including a rotary foraminous cylinder.
Tyler 1,671,557, issued May 29,1928, discloses a dishwash-ing machine having a suspended dish holder.
Kauffmann 1,760,307, issued May 27, 1930, discloses a metal dish tray for dishwashing machines.
Manchester 2,088,915, issued August 3, 1937, discloses a rotary drum washing machine.
The several domestic and foreign patents listed in this finding are cumulative to the various patents specifically set out and described in findings 19,20, and 21.
27. Defendant has urged that the accused washing machines procured by defendant failed to cleanse hospital and laboratory glassware and broke it excessively; however, defendant has stated that it does not now urge inoperativeness of the accused machines as a defense. Defendant has urged instead that the patents in suit are invalid on the ground that they are misdescriptive, misleading, and inadequate. The evidence presented is insufficient to support any finding that the patents here in suit are misdescriptive or mislead *304 ing or inadequate. Defendant’s service personnel, Soklosky, Andrews, and Hunn, who testified as to difficulties with particular machines, admitted they had not read the patents in suit.
28. A report of defendant’s Armed Services Medical Material Standardization Committee dated July 31, 1956, over one year subsequent to the filing date of plaintiffs’ petition herein, recommends deletion of the accused machines from the Armed Services Medical Stock List for Navy. An official of plaintiff Fisher Scientific Company testified that defendant’s U.S. Public Health Service at Norfolk purchased a washing machine constructed under the patents here in suit during the summer of 1957, and testified that 689 of such machines having a total sales value of approximately one-half million dollars have been sold by Fisher Scientific Company.
INFRINGEMENT
29. The parties have stipulated that plaintiff Fisher Scientific Company furnished a washing machine and drawings to defendant’s Armed Services Medical Procurement Agency at the time of an early bid, that these items were used by defendant in the preparation of specifications forming part of an invitation for bids on the procurement accused herein, and that the bid of Southern Cross Manufacturing Company on this procurement was lower than that of plaintiff Fisher Scientific Company.
30. Counsel for defendant has agreed that the accused washing machine procured by defendant is in fact made in accordance with the disclosure of the ’518 patent and the evidence does establish that the accused machine responds in terms to the recitals of the several patent claims upon which plaintiffs rely.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are not entitled to recover, and their petition is therefore dismissed.

*305